27 C.C.P.A. (Patents)

## In re McDEVITT.

### Patent Appeal No. 4218.

Court of Customs and Patent Appeals.
April 29, 1940.

Lawrence C. Kingsland, of St. Louis, Mo. (Estill E. Ezell and Edmund C. Rogers, both of St. Louis, Mo., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

All the claims in appellant's application for a patent relating to the wearing surface of streets and material for making the same were rejected by the Primary Examiner of the United States Patent Office, and upon appeal to the Board of Appeals it affirmed the decision of the examiner as to such claims as were before it. The appellant here seeks review of the board's decision with a view of having the same revised and reversed.

The claims on appeal here are all those which remain in the application and are numbered 1, 7, 10, and 17 to 21, inclusive. Claims 1, 10 and 21 were regarded as illustrative by the board of all the claims and will be so regarded by us. They follow:

"1. A wearing surface for streets and the like comprising the constituents: aggregate 93.5% to 95.5%; and asphaltic cement and admixture 6.5% to 4.5%, percentages by weight of total mix."

"10. A wearing surface for streets and the like comprising constituents of the following grades and quality and in the following proportions: aggregate 93.5% to 95.5%; passing 5/8" mesh, 100%; passing 5/8" mesh retained on 3/8-mesh, 5% to 15%; passing 3/8" mesh retained on No. 4 mesh, 15% to 35%; passing No. 4 mesh retained on No. 10 mesh, 25% to 45%; passing No. 10 mesh retained on No. 40 mesh, 15% to 40%; passing No. 40 mesh retained on No. 80 mesh, 0 to 10%; passing No. 80 mesh retained on No. 200 mesh, 0 to 3%; asphaltic cement 5.9% to 4.2% water free, penetration at 77° F., 75 to 100, penetration at 32° F., not less than 18, ductility at 77° F., not less than 100+c.m./meter; and admixture 0.6% to 0.3%, the distillate of asphalt base petroleum recovered between 307° to 426° F., gravity in decrease 100° F.; percentages being by weight of total mix."

"21. Surfacing material for traffic ways including aggregate, asphaltic cement, and admixture, said aggregate, asphaltic cement, and admixture being at a temperature of between 250° F. and 300°., 100% by weight of said aggregate of a size to pass a 5/8" mesh screen and less than 10% by weight of said aggregate of a size to pass a No. 40 mesh screen, said asphaltic cement and admixture comprising 4.5% to 6.5% by weight of the total mix, said asphaltic cement having a penetration at 77° F. of between 85 and 100, said material being placed hot, the resulting surface being in a condition for traffic immediately after levelling."

The references relied upon by the Primary Examiner were: Conzelman, 2,026,-

614, January 7, 1936; Taylor, 1,960,463, May 29, 1934.

The Board of Appeals called attention to an additional reference—Wallace, 1,-918,155, July 11, 1933, which shows projecting coarse particles of aggregate coated with oil, which prevent skidding.

The alleged invention here claimed and described in the application in great detail, relates to the wearing surface of streets and the material with which the same are constructed and is broadly claimed in claim 1. Appellant states that broadly his invention consists of: "aggregate 93.5 per cent to 95.5 per cent by weight of the total mix, and asphaltic cement and admixture, 6.5 per cent to 4.5 per cent by weight of the total mix, respectively. * * *"

Although the application describes in great detail the method of applying the material and the construction of the streets, no method claims are before us. Whether or not any such claims were divided out and appear in a separate application does not appear here.

The claims were rejected by the examiner on the ground that none of them were inventive over the teachings of Conzelman.

Conzelman teaches the use of a composition for building pavements by the use of asphalt as a flux and binding medium. His pavement is laid with a cold mixture and he teaches that it is preferable that the total asphalt in the mixture as laid on the road comprise from about $7\frac{1}{2}$ per centum to about $10\frac{1}{2}$ per centum by weight of the total mixture.

The Taylor patent relates to asphalt paving and the reclaiming of asphalt paving mixtures which become unserviceable for certain reasons. The particular mixture of Taylor is not involved here and this reference is cited because of the fact that it shows laying the pavement of hot material at a temperature of 300° F.

The examiner, after having stated the reasons for the rejection of the claims, some of which call for a temperature for the composition of between 250° F. to 300° F., concluded his statement by calling attention to the fact that it would not be inventive to apply the composition of Conzelman at a temperature of between 250° F. to 300° F. in view of the teaching of Taylor to apply similar compositions at a temperature of 300° F.

The board was of the view, as was the examiner, that the claims did not present matter constituting invention over Conzelman and said:

"After careful consideration of the record it is our view that the claims do not present matter constituting invention over Conzelman. We have given careful consideration to the very extended discussion and the brief and particularly in connection with the showing in the record as to the non-skidding qualities of a surface produced by this composition but we are still unable to agree that invention is involved in this situation. It seems to us that there is no warrant for a conclusion that Conzelman's product would not be equally effective in eliminating the tendency of asphaltic compositions to become glazed and slippery when wet. It is believed to be a matter of public knowledge that aggregate coated with a small amount of bituminous binder such that it leaves the particles largely exposed and projecting from the surface of the paving has become commonly employed in patching and surfacing highways for a number of years. This appears indicated by the patent to Wallace of record. It seems unwarranted to assume and assert that such surface effect is new with applicant. Beyond this, we see nothing more than an obvious matter of choice within the domain of mere test or research to determine the minimum amount of bituminous binder that would serve to effectively bind aggregate as a highway surfacing material. We must accordingly hold that this is a matter of degree and within the skill of those working in the art. Nothing new or unobvious is thought to flow from the particular selection of grading of the aggregate. This according to applicant's disclosure does not seem to be highly critical since a wide range is allowed. Equivalent grading of aggregate as fully disclosed by Taylor is pointed out by the examiner.

"We have carefully examined the several remaining groupings of claims and rejection thereof as applied by the examiner without finding error therein."

Appellant has filed a lengthy brief in this court and argues at great length that the broad invention as defined by claim 1 is not anticipated by the prior art, and stresses the fact that the use of the particular percentages of aggregate—$93\frac{1}{2}$ per centum to $95\frac{1}{2}$ per centum by weight of the total mix—and the percentages of the

asphaltic cement mixture—6.5 per centum to 4.5 per centum by weight of the total mix—is so important in solving a long-standing problem in an unusually successful manner, that Conzelman's teachings of the use of "from about 7½% to about 10½%, by weight" of the asphalt in the mixture should not be regarded as an anticipation. Appellant challenges the holding of the board that the asphaltic content of Conzelman's mixture as related to the aggregate would come within applicant's range.

Appellant here recites and with much earnestness, as he did in his application, the many virtues of his material, method and completed pavement, and claims by his combination and method of application to have produced a pavement which is producing unusually satisfactory results. He emphasizes that his material when used in the method described in the application produces a pavement which has all-weather anti-skid properties and diffuses and absorbs objectionable light rays when wet; that it is self-sealing under traffic and does not flake or ravel when subjected to continuous snow and rain; that it does not sweat under the hot summer sun or become soft. Appellant urges that all of these desirable results are due for the most part to the small amount of asphaltic cement used and that the small amount of asphaltic cement effects economy. He argues that all of the above-stated desirable qualities are found in no pavements which have previously been laid. He admits, however, that he works with materials well known in the prior art and that while some of the good qualities may be found in other pavements, all of them are found only in pavements constructed in accordance with the teachings of the instant application.

■ As indicating invention appellant urges that consideration should be given to the unusually satisfactory results flowing from the use of his material and method on the streets of St. Louis. Aside from statements in the application we find nothing in the record on the subject of unusually satisfactory results. It is true that appellant has brought into this court certain magazine articles not verified or shown to have been before the tribunals below, which relate to the successful employing of appellant's method in the use of his material. These are not parts of the record. Nevertheless, the Patent Office does not deny that appellant's product has met with great commercial success or that his method and product have produced satisfactory results and for the purpose of this case it may be assumed that appellant's product when used with his process will produce all the results claimed for it.

■ We are in agreement with the board that the record as a whole does not show that a difference between 6.5 per centum and "about 7½" per centum is so critical as to be necessarily accountable for the good results claimed and that the difference between the two proportions would be merely a matter of degree and not of kind. Moreover, such success as appellant claims may be due entirely to the method of application which is not fully covered by any of the claims at bar. The application describes the method in great detail, and among other things it is said:

"The above-described aggregate is thoroughly heated and dried. It is then measured into a mixer and thoroughly mixed so as to obtain uniform distribution of the various sizes of material. After it is thoroughly mixed and dried, the asphaltic cement is then added to it. The asphaltic cement consists of any approved grade or quality of asphalt that is free from water, that does not foam when heated to 350° F., and * * *.

"To this asphaltic cement is added what is called an admixture. This admixture has four primary properties, namely its liquefying effect upon the asphaltic cement; its tempering effect upon the asphaltic cement (the tempering providing variation of the rapidity of the setting of the asphalt); and the penetrative and adhesive properties of the resulting combination of asphaltic cement and admixture. * * * It has been found that such an admixture can be obtained from the distillation of asphalt base petroleum, particularly such as occurs in localities as Texas, Louisiana and Mexico.

* * * * * *

"This combination of asphaltic cement and admixture is introduced into the mixer containing the hot aggregate and preferably in an evenly distributed sheet. The mixer is then operated until each particle of the aggregate is coated and the entire mixture is uniform and homogeneous. Such mixing may take around forty-five seconds, or more.

"A mix as above prepared is applied to the road and rolled, as has previously been explained. * * * "

It will be observed that the applicant has emphasized the importance of his method with which we are not here concerned. There has been no suggestion as to what kind of pavement would result from using Conzelman's mixture with appellant's method of application.

From the foregoing it follows that claim 1 was properly rejected.

We next consider the remaining claims. All the claims recite that the asphaltic cement and admixture should comprise 4.5 per centum to 6.5 per centum by weight of the mix. The limitations of the claims, which do not appear in claim 1 are, aptly but briefly stated in the examiner's decision as follows:

"2. Claims 10, 20 and 21 contain limitations as to the size of the aggregate. Conzelman says nothing of the size of the aggregate. However, it is well known to grade aggregate as shown by Taylor and the use of particular proportions of graded aggregate is not believed to produce any result different from Conzelman other than in degree.

"3. Claims 10, 19, 20 and 21 recite the physical properties of the asphalt and claim 10 recites the physical properties of the admixture. The physical properties of any asphaltic cement will have to meet different requirements depending upon the climatic conditions of the place of use and it is regarded as within the purview of any skilled artisan to select the asphalt having the correct physical properties to suit the conditions of use.

"4. Claims 7, 17; 20 and 21 contain limitations as to temperature of the composition at the time of use. These limitations are all in terms of process and, it is believed, must be disregarded in considering the potentiality of composition claims."

In brief, we think these claims were properly rejected for the reasons assigned by the tribunals below. Limitations in the claims, functional in character and relating to the process of producing appellant's material and article, we think do not add patentability to the same, and since the elements of claim 1, which are found in all the claims and which broadly cover the alleged invention, do not define invention over the prior art, we must conclude that the tribunals of the Patent Office did not err in rejecting them. Moreover, some of the limitations merely state the characteristics of the pavement after appellant's mixture has been used and some of them are limited to the temperatures and method applied. For instance, claim 7, as distinguished from claim 1, emphasizes, as does Taylor, the use of a hot material and describes the various good qualities of the pavement which have been stated hereinbefore. In view of Taylor it is obvious that if claim 1 is not allowable, claim 7 is likewise unpatentable.

A further illustration of the character of claims whose limitations are emphasized by appellant are claims 18 and 19. Claim 18 in no sense differs from claim 1 except in the result obtained. Claim 19, while somewhat differently worded, differs from claim 1 by describing in degrees the penetration qualities of the asphalt used.

Claim 20, in addition to the matter claimed in claim 1 limits the temperature of the admixture and defines the kind of the mix screen used in producing the various sizes of aggregate. The same is true of claim 21, except it contains limitations as to the penetrating qualities and other functional and immaterial limitations.

In oral argument, appellant's counsel has particularly urged the patentability of claims 10, 20 and 21 which emphasize the use of certain percentages of so-called "fines" (the smaller particles). It was the contention that many of the beneficial results claimed flow from the particular percentages of fine particles in the aggregate and that the prior art nowhere teaches this feature of appellant's alleged invention. For reasons stated by the tribunals and stated herein, we think the limitation relating to certain fines in said claims does not support patentability thereof in view of the prior art cited.

We are in agreement with the tribunals below in their holding to the effect that what appellant has done is nothing more than that which one skilled in the art, with the prior art in view, might accomplish by experimentation, without the use of the inventive faculty. The art is not a new one. Roads and street surfaces laid with asphalt mixed with various percentages of aggregate having anti-skid and nonlight-reflecting properties and other good qualities are not new. If appellant's pavement is better than that produced by following the teachings of the prior art,

we think it is a matter of degree and not of kind. The business of paving streets, like all other great industrial enterprises, should not be handicapped by the allowance of a patent monopoly upon accomplishments clearly not inventive whereby the efforts to improve their product by those skilled in the art would be unduly and improperly handicapped.

The decision of the Board of Appeals is affirmed.

Affirmed.