44 C.C.P.A. (Patents).

**Matter of the Application of Merle P. CHAPLIN.**

**Patent Appeals No. 6272.**

United States Court of Customs and Patent Appeals.

June 4, 1957.

Cornelius Zabriskie, New York City (Almon S. Nelson, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, RICH, and JACKSON (retired), Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection of claims 1

to 10, inclusive, of appellant's application No. 118,169 for a patent on an apparatus for manufacturing pulp articles. While it was stated by both the examiner and the board that the claims were rejected on the ground of double patenting in view of appellant's patent No. 2,388,828, it is evident, as will be pointed out below, that the actual basis on which the appealed claims were refused was lack of adequate disclosure in the appealed application.

Claims 1 and 2, which are representative, read:

"1. A pulp-molding machine comprising a pulp tank, a horizontal shaft above the tank, a rotatable carrier mounted on the shaft, a forming die on the carrier and moved by said carrier in a vertical path through the tank to a horizontal position above the tank, a vertical shaft laterally spaced from the carrier, a horizontal drying die supported on the vertical shaft for movement around the axis of said vertical shaft in a circular path laterally spaced from the path of movement of the forming die, a permanently horizontal transfer die movable vertically toward and away from the forming die and the drying die and laterally across the space between the paths of movement of the forming die and the drying die.

"2. The combination specified in claim 1, in which the movements of the forming die, drying die and transfer die are step by step and synchronous."

The references relied on are:

Neubert  1,248,381  Nov. 27, 1917
Chaplin  2,388,828  Nov. 13, 1945

Appellant's application here involved was filed September 27, 1949, as a division of his prior application No. 441,100, filed April 30, 1942, on which patent No. 2,494,743 was granted January 17, 1950. The disclosures of the two applications are substantially identical. Each of them shows a cylindrical drum which is rotatably mounted on a horizontal axis and carries, on its circumference, a number of forming dies. A suction is maintained in the interior of the drum and, as it rotates, the dies dip into a pulp tank with the result that pulp articles are formed on them. Continued rotation of the drum removes the articles from the tank and as each die reaches the top of the drum, its pulp article is engaged and removed by a transfer die which lifts it, moves it horizontally, and deposits it on one of a series of drying dies which are mounted for rotation about a vertical axis. As the drying dies move about the axis they are successively elevated so that the article is pressed between its drying die and a correspondingly shaped smoothing die. Subsequently, the drying dies are lowered and the articles are removed by mechanism not involved in this appeal.

The mechanism by which the transfer die is moved is not disclosed in detail but is said to be of the kind disclosed in the patent to Neubert No. 1,248,381. That patent shows an apparatus in which a transfer die is supported for vertical movement on a carriage which is movable along a horizontal track from a point above a forming die to a point above the location at which molded articles are to be deposited. When a molded article is to be transferred, the carriage is moved into position above the molding die and the transfer die is lowered to engage the article on the molding die, and then raised to disengage the article. Thereupon, the carriage is moved along the track to a position over the point where the mold is to be placed, and the transfer die is lowered to deposit the mold.

The appealed application contains the following statement: "Suitable mechanism is provided for driving the various parts of the machine in desired synchronism. These mechanisms are not shown, as they are well known in the art."

Appellant's patent No. 2,388,828, on which the double patenting rejection is based, was granted on an application filed May 2, 1942, subsequent to the filing

date of the parent of the appealed application. The patent shows an arrangement basically similar to that of the appealed application, and comprising pulp article forming dies mounted for rotation about a horizontal axis, drying dies rotatable about a vertical axis, and a transfer mechanism for moving the pulp articles from the forming dies to the drying dies. The transfer mechanism includes a series of transfer dies which are mounted for movement about a vertical axis located between the forming and drying dies. As each transfer die moves over a forming die it is lowered to engage the pulp article thereon and raised to remove the article; then it is moved about the vertical axis until it reaches a position over a drying die, whereupon it is lowered to deposit the article on that die, and raised to leave it there, after which it is further rotated to a position over a forming die and the operation is repeated. The movement of the various parts is intermittent and is synchronized so that the forming and drying dies remain stationary during the vertical movements of the transfer dies.

The double patenting rejection is based solely on claim 3 of patent No. 2,388,828, which is as follows:

"3. In a pulp molding machine, a forming unit comprising a horizontal shaft, a plurality of angularly spaced foraminous forming dies mounted to rotate with said forming unit shaft in a vertical path, a drying unit comprising a vertical shaft, a plurality of angularly spaced pairs of permanently axially alined mating drying dies mounted to rotate with said drying unit shaft in horizontal paths laterally spaced from the path of the forming dies, means for imparting a relative vertical movement to the drying dies of each pair successively, a transfer unit interposed between the forming unit and the drying unit comprising a vertical shaft and a plurality of angularly spaced transfer dies mounted to rotate with the transfer unit shaft in a horizontal path overlapping the path of the forming dies and the paths of the drying dies, a drive shaft, means for intermittently imparting rotation of the drive shaft synchronously to the forming unit shaft, the drying unit shaft and the transfer unit shaft with interspersed periods of rest to position successive transfer dies in axial alinement with successive pairs of drying dies, and means actuated by the drive shaft while the forming dies and drying dies are at rest for imparting vertical reciprocation to the transfer dies to simultaneously move one of the transfer dies toward and away from the forming die with which it is alined and another transfer die toward and away from one of the pair of drying dies with which it is alined."

It is to be noted that the patent claim is expressly limited to a construction in which the transfer dies are mounted for rotation on a vertical shaft in a horizontal path overlapping the paths of the drying and forming dies. No such arrangement is disclosed in the appealed application, wherein the only transfer means suggested is that of the Neubert patent which, as above explained, involves a movement of the transfer dies by means of a reciprocable carriage.

Neither the examiner nor the board made any specific comparison of any of the appealed claims with claim 3 of patent No. 2,388,828, and the decision to be reviewed here appears to have been based on a question of sufficiency of disclosure rather than on similarity between claims. Thus the board, after stating that it was "established law" that "a patent issued with claims to the species disclosed therein does not constitute a bar against the allowance of a second patent on an application of an earlier filing date disclosing a different species and claiming the generic invention to the two species," concluded that "Since the instant application does not adequately disclose a complete apparatus species and hence, in effect, does

not disclose any species, appellant has failed to qualify under the aforementioned statement of law as reflected by the decisions cited in his brief. Accordingly, the Examiner's holding will be sustained."

The appealed claims may be divided into two groups, the first comprising claims 1, 3, 5, 7, 9, and 10, which recite the transfer die and its movements broadly, and the second comprising claims 2, 4, 6, and 8, which require that the movements of that die be synchronized with those of the forming and drying dies.

We are of the opinion that the appealed application sufficiently discloses an apparatus supporting the claims of the first group. The application specifically suggests the use of a mechanism, such as is shown by the Neubert patent, for effecting movement of the transfer die. As above noted, that patent shows a horizontally movable carriage supporting a vertically movable transfer die. That arrangement could be incorporated, without any substantial modification, in the structure shown by appellant's application, in such a manner as to move the transfer die between the forming and drying dies, and to pick up and deposit the molded articles in the manner described in the application. The resultant structure would fully satisfy the requirements of claims 1, 3, 5, 7, 9, and 10 which contain no statement as to when or how the means which move the transfer die are operated.

It follows that appellant's application discloses a structure corresponding to appealed claims 1, 3, 5, 7, 9, and 10 and entirely distinct from that defined in claim 3 of patent No. 2,388,828, since the latter claim is limited to the use of a rotary transfer mechanism including a plurality of dies and coordinated in a specified manner with the remaining elements of the apparatus. In our opinion, claim 3 of the patent is limited to a specific inventive concept which is distinct from that recited in the generic claims 1, 3, 5, 7, 9, and 10 of the appealed application.

With respect to claims 2, 4, 6, and 8, a different situation is presented since those claims call for synchronization of the movements of the forming, transfer, and drying dies. Assuming that the Neubert transfer die is incorporated in appellant's structure as above suggested, it is by no means obvious how its movements are to be synchronized with those of the other dies. Neubert does not show specifically how his carriage and die lowering means are to be driven, nor does appellant's application show driving means for moving the forming and drying dies.

A structure as called for by claims 2, 4, 6, and 8 could not be produced by a simple combination of the Neubert structure with what is shown in the appealed application. It would be necessary in effecting that result to devise a rather complex mechanism, the specific form of which is not suggested by either the application or the patent.

Appellant has also included in the record and discussed in his brief the patents to Winnertz Nos. 1,401,979 and 1,621,147 and the Chapman reissue patent No. 19,856. It does not appear that those patents were considered by the examiner or the board in connection with the rejection here under consideration; and no mention is made of them in appellant's reasons of appeal to this court. Accordingly, no decision here could be properly based on them. Morgenstern v. Burton, 86 F.2d 341, 24 C.C.P.A., Patents, 734; In re Eitzen, 86 F.2d 829, 24 C.C.P.A., Patents, 778; In re McDevitt, 111 F.2d 153, 27 C.C.P.A., Patents, 1115; In re Brogden, 156 F.2d 82, 33 C.C.P.A., Patents, 1181; In re Selmi, 156 F.2d 96, 33 C.C.P.A., Patents, 1187. It may be noted, however, that those patents appear to be merely cumulative to the patents which were considered by the Patent Office tribunals.

It is true that an applicant is entitled to rely upon the disclosure of the prior

art and is not required to explain in detail structures which are already well known. However, none of the prior art cited in this case shows apparatus which could be used without extensive modification to synchronize appellant's dies. The mere fact that, as stated in appellant's brief, "The art is replete with mechanisms to perform all sorts of die movements" does not necessarily justify as an adequate disclosure one, such as we have here, which merely indicates generally the movements desired and leaves it to the prospective user to select and combine features from the prior art to produce such movements.

It is generally agreed among the courts that an applicant for a patent, in the description of a new and essential element claimed as his invention or discovery, must do something more in meeting the requirements of the statute than give cues for future experiments by persons skilled in the art who desire to carry out the invention. See, for example, Sinclair & Carroll Co., Inc., v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644; In re Beach, 152 F.2d 981, 33 C.C.P.A., Patents, 815; H. Ward Leonard, Inc., v. Maxwell Motor Sales Corp., 2 Cir., 252 F. 584.

It is not always a simple matter to distinguish between structure which must be specifically disclosed in an application and that which is so well understood in the art that a mere reference to it is sufficient. In the instant case, however, we are of the opinion that, so far as the synchronization of the dies is concerned, the inadequate disclosure of appellant's application leaves too much to the ingenuity, skill and industry of persons desiring to practice the invention, and hence the Board of Appeals properly held the disclosure in that respect to be insufficient. Accordingly, claims 2, 4, 6, and 8, which are limited to an apparatus in which the movements of the forming, transfer and drying dies are synchronized, were properly rejected.

The decision of the Board of Appeals is modified, being affirmed as to claims 2, 4, 6, and 8, and reversed as to claims 1, 3, 5, 7, 9 and 10.

Modified.

WORLEY, J., because of illness, was not present at the argument of this case, but, by agreement of counsel, participated in this decision.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.